# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | **Criminal No.  12-CR-579 (TJM)** |
| ) | |
| **v.**                         ) | |
| ) | |
| **GLENN R. UNGER,**            ) | |
| ) | |
| ) | |
| **Defendant.**                 ) | |

## UNITED STATES' TRIAL MEMORANDUM

Dated: October 2, 2013          RICHARD S. HARTUNIAN
                                United States Attorney

                        By:     /S/
                                Ransom P. Reynolds
                                Assistant United States Attorney
                                Bar Roll No. 512035

                                /S/
                                Jeffrey Bender
                                United States Department of Justice, Tax Division
                                Trial Attorney

1

# Contents           Page

I.      STATEMENT OF THE CASE .................................................................................. 2

II.     STATEMENT OF FACTS ...................................................................................... 3

     A.   Obstruction of Internal Revenue laws (Counts 1-5) ........................................ 3

     B.   Tax Evasion (Count 6) ..................................................................................... 7

     **C.**   Fictitious Obligations and Dr. William O'Donnell (Count 7) ......................... 8

III.    STATEMENT OF THE LAW ................................................................................ 10

     A.   Count 1:Obstructing and impeding the IRS (18 U.S.C. §7212(a) ................... 10

     B.   Counts 2-5:  False claim for refund (18 U.S.C. § 287) .................................. 11

     C.   Count 6:  Tax Evasion (26 U.S.C. § 7201) ..................................................... 13

        1.    Additional Tax Due and Owing ................................................................ 13

        2.    Evade Tax or Payment Thereof ................................................................ 13

        3.    Willfulness ............................................................................................... 14

     D.   Count 7:  Fictitious Obligations (18 U.S.C. § 514(a)(2)) ............................... 14

IV.    EVIDENTIARY ISSUES ..................................................................................... 15

     A.   Expert Testimony .......................................................................................... 15

V.   CONCLUSION..................................................................................................... 16

I.      **STATEMENT OF THE CASE**

     A.     Jury selection is scheduled to commence at the discretion of Senior United States District Judge Thomas J. McAvoy on October 16, 2013, in Albany, New York.

     B.     The defendant is in custody.

     C.     Jury trial has not been waived.

     D.     The estimated duration of trial is approximately four (4) days.

     E.     The Indictment charges the defendant with obstructing and impeding the IRS by committing 15 obstructive acts (Count 1); Filing a false claim against the U.S. claiming a refund of taxes in the amount of $238,406.47 (Count 2); Filing a false claim against the U.S. claiming a refund of taxes in the amount of $200,000.00 (Count 3); Filing a false claim against the U.S. claiming a refund of taxes in the amount of $2,729.58 (Count 4); Filing a false claim against the U.S. claiming a refund of taxes in the amount of $285,973.90 (Count 5); Attempt to evade income tax and penalties due by him by submitting for filing a false document with the Saratoga County Clerk's Office (Count 6); and passing and presenting a false and fictitious instrument with the intent to defraud (Count 7).

     F.     Expert witnesses- Amy Frame with the Department of Public Debt will be testifying as an expert in this case.

     G.     Other potential witnesses:

          Julie Carruthers – IRS Special Agent

          Chris West – FBI Special Agent

          Roger George - Align Technology Representative

          Holly Carter - Orthodontic Fee Plan

          Jessica Holmes - Columbia Land Conservancy

Kathy Kausek - Progressive Corporation

Paula Wilson – Defendant's landlord

TD Banknorth Representative

William O'Donnell - Orthodontist

Diana Garland – Saratoga County Senior Index Clerk

Holly Nicholson - IRS

Hugh Burke - Saratoga County Attorney

Paul Crowley - IRS

Shauna Henline - IRS

TD Auto Finance Representative

Time Warner Cable Representative

Jason Coffin – A Cut Above Landscaping

The Advertiser – Capital Region Weekly Newspaper Representative

Shelly Aubrey – Albany County Clerk's Office

During the course of preparing for trial, the government may come across other potential witnesses.  Our final witness list will be submitted prior to commencement of the trial.

## II.   **STATEMENT OF FACTS**

### A. **Obstruction of Internal Revenue laws (Counts 1-5)**

Between December 2007 and April 2011, Unger mailed fourteen (14) false and fictitious forms to the Internal Revenue Service (IRS), including IRS Form 1040 (U.S. Individual Income Tax Return), Form 1040NR (U.S. Non-Resident Alien Income Tax Return), Form 843 (Claim for Refund and Request for Abatement), and Form 709 (U.S. Gift and Generation-Skipping Transfer Tax Return).  The forms that he filed with the IRS each had fraudulent and frivolous

3

documents attached in order to fraudulently obtain refunds from the IRS.  Due to the frivolous nature of the claims, all of the defendant's claims were transferred to the IRS Frivolous Return Program (FRP) in Ogden, Utah.   While no refunds were actually issued to Unger for his false filings, in total, the fraudulent returns presented to the IRS requested refunds of over $36 million. Basically, the defendant claimed over $36 million in refunds to which he was not entitled.

One of the primary tax schemes Unger utilized is referred to as the 1099-Original Issue Discount scheme.  This bogus tax refund scheme is one of the most common tax schemes perpetuated on the IRS in recent years.  In Unger's case, he utilized IRS Form 1099-Original Issue Discount ("OID") to claim an income tax refund on the fraudulent 1040 tax returns he filed in 2007 and 2008.  After the defendant mailed his bogus returns to the IRS, the returns were transferred to the FRP for processing.  The FRP then mailed the defendant several letters notifying him that his returns were frivolous and subject to a $5,000 penalty per frivolous return. For example, on March 4, 2008, and again on May 1, 2008, the IRS-FRP sent Unger letters notifying him that his returns were frivolous and that he was being assessed a $5,000 penalty per return.  On December 30, 2012, during the execution of a federal search warrant at the defendant's residence located at 10097 State Highway 37, Ogdensburg, New York, FBI and IRS agents located a copy of the above described May 1, 2008 letter from the IRS-FRP to the defendant.

The Form 1099-OID's are legitimately used by tax filers who must pay taxes on income they receive from the interest on certain investments, such as certain types of bonds.  Tax on certain bonds must be paid as income accrues.  Such bond holders receive annual forms (1099 forms) from the debt issuers.  Bond holders then report this 1099 information on their income tax returns.

Unger, however, utilized the 1099 forms in a nonsensical way to fraudulently claim refunds.  Specifically, Unger assembled various financial documents and other records of debt and spending.  This debt information, rather than any actual bond income, was used to prepare and/or finalize false tax returns and fictitious Forms 1099-OID.  For example, on March 21, 2008, Unger fraudulently utilized the 1099-OID form and filed with the IRS a false claim for payment of a refund of taxes in the amount of $35,000,150.00.  Unger attached an OID form to his individual 1040 tax return purportedly representing that he had paid Time Warner Cable $35,000,150.00 in interest, which was false.  In addition to claiming on the form that he paid $35 million to Time Warner, Unger also claimed on the form that he (Unger) withheld $35 million of taxes, which was also false.  Based upon the foregoing two false claims, Unger claimed on his 1040 return that he was entitled to a refund in that same amount, $35,000,150.00.  Basically, Unger attempted to convince the IRS that he paid Time Warner $35 million, that he (Unger) also paid the government $35 million in tax withholdings, and that he was then entitled to a refund in that same amount.   To reiterate, he utilized the 1099 forms in a nonsensical way.

In addition to the 1099 OID scheme, Unger also utilized other IRS forms, such as Form 843 (Claim for Refund and Request for Abatement) and Form 709 (U.S. Gift and Generation-Skipping Transfer Tax Return), in a nonsensical way to falsely claim refunds from the IRS.  For example, Unger filed five (5) separate 843 forms on the same date claiming refunds for five (5) separate tax years (2004-2008) totaling $51,670.61.  Unger also filed a 709 form claiming a refund totaling $90,096.11.  Below is a chart summarizing Unger's 14 bogus filings for a refund:

**14 IRS FALSE FILINGS**

| Tax Period | Return | Date Filed | Date Signed | Envelope/ Postmark* | Refund Requested |
|------------|--------|------------|-------------|---------------------|------------------|
| 2004 | 1040 | 12/28/07 | 12/20/07 | Postmarked | $238,406.47 |

| Tax Period | Return | Date Filed | Date Signed | Envelope/ Postmark* | Refund Requested |
|---|---|---|---|---|---|
| | | | | Ogdensburg, NY | |
| 2007 | 1040NR | 12/31/07 | 12/27/07 | Postmarked Ogdensburg, NY | $200,000 |
| 2005 | 1040 | 1/2/08 | 12/26/07 | No Postmark on Envelope | $112,546.53 |
| 2006 | 1040 | 1/7/08 | 1/2/08 | Postmarked Watertown, NY | $2,729.58 |
| 2006 | 1040 | 2/25/08 | Not Signed | No Envelope | $65,121.20 |
| 2007 | 1040 | 3/21/08 | 1/24/08 | No Envelope | $35,000,150 |
| 2007 | 1040 | 3/21/08 | 1/24/08 | No Envelope | $266,847.92 |
| 2008 | 1040 | 7/8/08 | 6/30/08 | Postmarked Potsdam, NY | $285,973.90 |
| 2004 | 843 | 4/20/11 | 3/19/11 | Postmarked Plainville, MA | $5,936.16 |
| 2005 | 843 | 4/20/11 | 3/19/11 | Postmarked Plainville, MA | $5,761.59 |
| 2006 | 843 | 4/20/11 | 3/19/11 | Postmarked Plainville, MA | $17,235.28 |
| 2007 | 843 | 4/20/11 | 3/19/11 | Postmarked Plainville, MA | $17,153.08 |
| 2008 | 843 | 4/20/11 | 3/19/11 | No Envelope | $5,584.50 |
| 2010 | 709 | 4/20/11 | 3/19/11 | Postmarked Plainville, MA | $90,096.11 |
| **Total Amount of Refunds Requested:** | | | | | **$36,313,542.32** |

*\* Returns with no envelope were timely and accepted by the IRS when submitted, and therefore the envelopes were discarded by the IRS upon receipt.*

As a result of the foregoing 14 filings, the IRS assessed multiple frivolous filing penalties against Unger.  The IRS also assessed Unger for taxes that he owed on income that he received during tax years 2005 and 2006.  The IRS then determined that Unger owed the IRS $116,410.43 in penalties, taxes and interest.    After the IRS unsuccessfully attempted to collect the money from Unger, the IRS filed a tax lien against Unger in Saratoga County in the amount of $116,410.43.  The tax lien was filed by the IRS in Saratoga County on August 4, 2009.  On June

17, 2011, Unger filed a false document with the Saratoga County Clerk's Office in order to attempt to evade payment of the $116,410.43 tax lien.

### B. Tax Evasion (Count 6)

In June 2010, the Internal Revenue Service-Criminal Investigations Division (IRS-CID) initiated an investigation into the defendant based on a referral from the IRS Civil Collection unit.  The Civil Collection unit is a division within the IRS whose primary function is to identify and detect taxpayers whose taxes have not been paid or have not been filed.  Included within these responsibilities is the identification of taxpayers who fail to pay the required taxes on their income.

During the investigation, the Civil Collection unit learned that Unger had failed to file the required personal income tax returns for tax years 2005 and 2006.  The IRS, through its third party information reporting system, received information that UNGER received taxable distributions from his retirement accounts and interest income for the years 2005 and 2006.

In 2005, Unger withdrew $20,000.00 from his Scottrade, Inc. IRA account which was an IRS reportable transaction because it was an early retirement distribution.  As required by law, Scottrade reported this transaction to the IRS.  However, Unger did not report this transaction to the IRS.   As a result, the IRS assessed a $3,409.00 tax assessment against Unger for this transaction.

In 2006, Unger withdrew $125,050.00 from his Scottrade, Inc. IRA account which was an IRS reportable transaction because it was an early retirement distribution.  Unger also received $164.00 in interest from Seacomm Federal Credit Union.  As required by law, Scottrade and Seacomm reported these transactions to the IRS.  However, Unger did not report the

transactions to the IRS.  As a result, the IRS assessed a $39,530.00 tax assessment against Unger for these two transactions.

Beginning in 2009, Unger was informed of his tax liability by employees of the Small Business and Self Employed (SBSE) Division of the IRS.  IRS Revenue Officer, Holly Nicholson, was the IRS employee responsible for the collection of tax due and owing by Unger.[1] Officer Nicholson began the collection process by sending Unger a collection notice, which also included a notice of intent to levy.  When Unger was contacted by Nicholson, he returned documentation by mail with constitutional arguments meant to impede and impair the IRS from collecting his tax due and owing.

On August 4, 2009, the IRS filed a tax lien in Saratoga County against Unger in the amount of $116,410.00.  The lien was for Unger's failure to pay income taxes and also included penalties for frivolous IRS tax filings plus interest.  On June 17, 2011, Unger attempted to file a document at the Saratoga County Clerk's Office that falsely indicated that he had paid the federal tax lien.   The Clerk's Office did not actually file the documents as they recognized it to be suspicious.

### C.  Fictitious Obligations and Dr. William O'Donnell (Count 7)

From the late 1990's through at least the middle of 2006, Unger practiced as an orthodontist at Columbia County Orthodontics in Chatham, New York.  In the spring of 2006, Unger approached a nearby orthodontist named William O'Donnell and told O'Donnell that he was giving up his dental practice to perform "missionary work" and to tend to his ailing wife. Unger also stated that he had about 80 patients in need of orthodontic care in the future. However, Unger failed to tell O'Donnell that all of those patients had already prepaid Unger for

---

[1] "Holly Nicholson" is a pseudonym that she uses in her position as an IRS collections officer to prevent harassment by tax payers.

services that O'Donnell would be providing to Unger's patients in the future.  O'Donnell agreed to accept Unger's patients in about May 2006 assuming he'd be paid for his future work. Once O'Donnell began treating Unger's patients, he realized that Unger had already been paid for those services.

Beginning in 2007, O'Donnell contacted Unger to express his frustrations.  O'Donnell was then instructed by Unger to communicate through Unger's associate, Kevin Mahoney.[2] According to O'Donnell, the materials and services he was required to provide to Unger's former patients were worth approximately $130,375.00.  On December 2, 2007, O'Donnell contacted Mahoney to try to find a way to get Unger to pay O'Donnell for the amount O'Donnell felt he was owed.   O'Donnell emailed Mahoney a breakdown of the expenses he had incurred caring for Unger's patients.  A few days later, O'Donnell received a false "Secured Promissory Note" from Unger/Mahoney in the mail.  The note was dated December 7, 2007, and claimed to be in the amount of $200,000.  The note claimed that somehow it would pay then Secretary of the Treasury Paulson that amount, and then that amount would be paid to O'Donnell as the "fiduciary" on the note.  Unaware that the note was fictitious, O'Donnell attempted to deposit the note at his bank, and was told it was worthless.

In January 2008, Unger filed that purported "Secured Promissory Note," in the supposed amount of $200,000, as well as other documents, with the Albany County Clerk's Office.  The documents filed with the clerk's office are signed by Unger.  They are apparently meant to be a public filing reflecting the purported payment presented to Dr. O'Donnell regarding the orthodontic practice.

---

[2] Kevin Mahoney was convicted of similar tax charges (7212(a) and other charges) in Massachusetts in 2012.

### III.    STATEMENT OF THE LAW

#### A.  Count 1:Obstructing and impeding the IRS (18 U.S.C. §7212(a)

In order to prove a violation of Section 7212(a), the Government must prove beyond a reasonable doubt that Unger:

1.      In any way corruptly;
2.      Endeavored;
3.      To obstruct or impede the due administration of the Internal Revenue code

United States v. Kelly, 147 F.3d 172, 176 (2d Cir. 1998).

To establish a corrupt act, the Government must prove that the defendant has "act[ed] with the intent to secure an unlawful advantage or benefit either for one's self or for another." Id. at 176-77.  The corrupt acts need not be illegal.  United States v. Mitchell, 985 F.2d 1275, 1278 (4th Cir. 1993).  "Misrepresentation and fraud . . . are paradigm examples of activities done with an intent to gain an improper benefit or advantage."  Id. To establish an endeavor, the Government must prove that the defendant "knowingly and intentionally [made] any effort which [had] a reasonable tendency to bring about the desired result."  Kelly, 147 F.3d at 177.

Section 7212(a) does not include any language requiring that the defendant acted willfully.  The Second Circuit has upheld a district court's refusal to give a Cheek willfulness instruction, noting that 7212(a) does not include that term and opining that the district court's instructions as to "corruptly" and "endeavors" were "as comprehensive and accurate as if the word 'willfully' was incorporated in the statute."  Id.

Unger's conduct from at least December 28, 2007 through at least mid-2011 consisted of various corrupt endeavors committed for the purpose of obstructing and impeding the Internal Revenue Service from duly administering the laws of the Internal Revenue Code.  With each

document that he filed or caused to be filed, Unger obstructed the IRS from properly calculating and assessing his personal tax due and owing, and because he filed 1099-OID forms, he also impeded the IRS from properly calculating and assessing tax due and owing from 1099-OID victims such as Time Warner, O'Donnell, and others.

In addition to those fourteen filings, Unger attempted to cause false documentation to be filed with the Saratoga County Clerk's Office in the Northern District of New York indicating that the federal tax lien placed on him by the IRS had been resolved.[4]  This attempt at a public filing was clearly an act meant to impede and obstruct the IRS from administering the tax laws, because if it had gone undetected, it would have served to prevent the IRS from properly collecting on the taxes that Unger owed.  Furthermore, the documentation specifically references Revenue Officer Holly Nicholson, IRS Commissioner Schulman, and various branches of the IRS itself.  While the evidence appears to indicate that a third party associate of Unger's may have been responsible for the actual filing of the documents, the documents all purport to benefit Unger and there is a strong circumstantial argument that shows Unger caused them to be filed, because they specifically reference the tax liens against Unger.

**B.  Counts 2-5:  False claim for refund (18 U.S.C. § 287)**

The elements of proof for a charge under 18 U.S.C. § 287 are:

1.      The defendant made or presented a claim for money or property to a department or agency of the United States;
2.      The claim was false, fictitious, or fraudulent; and
3.      The defendant knew at the time that the claim was false, fictitious, or fraudulent.

---

[4] The documentation was apparently never actually placed on file with the clerk's office, as a vigilant employee of the office recognized that the documents were likely fraudulent.

United States v. Reesor, 168 F.3d 490 (6th Cir. 1998 (unpub.)).  A tax return seeking a refund is a claim against the United States.  United States v. Drape, 668 F.2d 22, 26 (1st Cir. 1982).  The offense is complete upon filing the claim; the government need not pay or honor it.  United States v. Coachman, 727 F.2d 1293, 1302 (D.C. Cir. 1984).

Section 287 is phrased in the disjunctive.  Thus, charges under that statute may be based on proof that a claim submitted to the government was false, fictitious, or fraudulent.  United States v. Murph, 707 F.2d 895, 896-97 (6th Cir. 1983).  A claim is false or fictitious if known to be untrue when made, and is fraudulent if made with the intent to deceive the government.  United States v. Irwin, 654 F.2d 671, 683 (10th Cir. 1981).  False tax returns seeking refunds are all three of these.

Section 287 does not specifically require that a claim be false as to a "material" matter United States v. Logan, 250 F.3d 350, 358 (6th Cir. 2001).  Logan postdates both United States v. Gaudin, 515 U.S. 506 (1995) and United States v. Neder, 527 U.S. 1 (1999), so that the Sixth Circuit is clearly of the opinion that Logan is in harmony with recent Supreme Court opinions on materiality.  The defendant need not be the person who actually prepared or filed the claim for refund.  Evidence that the defendant caused the return seeking a claim for refund to be prepared and filed is sufficient to establish the first element under 18 U.S.C. § 287.  United States v. Holloway, 731 F.2d 378 (6th Cir. 1984). The applicable mental state for § 287 offenses is knowledge that the claim was false when it was filed.  Id. at 380-81.  The term "willfully" is not used in § 287 and so willfulness is not an element of the crime.  United States v. Irwin, 654 F.2d 671, 682 (10th Cir. 1981).

Counts 2-5 of the indictment relate to the four filings that Unger submitted to the IRS that were postmarked in the Northern District of New York.  Each of Unger's submissions to the IRS

12

in those four instances contained completely false Forms 1099-OID and some had additional false and fictitious documentation attached as well.  In each of these four false claims, the defendant fraudulently sought refunds form the IRS.

### C.  Count 6:  Tax Evasion (26 U.S.C. § 7201)

To establish a violation of this statute, the government must prove the following elements beyond a reasonable doubt:

1.  Additional tax due and owing;
2.  Attempt to evade or defeat a tax or the payment thereof; and
3.  Willfulness.

Sansone v. United States, 380 U.S. 343, 351 (1965); United States v. Bishop, 412 U.S. 346, 359 (1973).

### 1.    Additional Tax Due and Owing

A tax deficiency arises by operation of law on the due date of the tax return.  United States v. Daniel, 956 F.2d 540, 542 (6th Cir. 1992).  The IRS need not have assessed taxes and demanded payment.  With regard to the additional tax due, the amount of the deficiency need not be exact; the government meets its burden when it shows that income was under-reported by a substantial amount. United States v. Marcus, 401 F.2d 563, 565 (2d Cir. 1969).

### 2.    Evade Tax or Payment Thereof

The attempt to evade tax or payment thereof must be established by proof of an affirmative act.  Spies v. United States, 317 U.S. 492 (1943).  Generally "any conduct, the likely effect of which would be to mislead or conceal" will establish an attempt.  Id. at 499.  Such conduct extends to otherwise legal conduct that is done with the intent to evade tax.  United States v. Jungles, 903 F.2d 468, 474 (7th Cir. 1990) (taxpayer's entry into independent contractor agreement was necessary affirmative act, albeit legal one).  "[H]andling of one's affairs to avoid

13

making the records usual in transactions of the kind" may satisfy the affirmative act requirement. Spies, 317 U.S. at 499.

In this case, there is one strong affirmative act that shows Unger's attempt to evade payment of taxes: his attempt to cause documents to be filed with the Saratoga County Clerk's Office in June 2011 stating that his tax liens had been resolved and satisfied.

### 3.   Willfulness

Willfulness is the "voluntary, intentional violation of a known legal duty."  Cheek v. United States, 498 U.S. 192, 200 (1991); United States v. Pomponio, 429 U.S. 10 (1976); United States v. Monteiro, 871 F.2d 204, 208-09 (1st Cir. 1989).  The Government must show that a taxpayer was aware of his obligations under the tax laws.  United States v. Fitzsimmons, 712 F.2d 1196, 1198 (7th Cir. 1983) (must be "proof that the appellant knew he was violating a 'known legal duty.'").  Because direct proof of a defendant's state of mind or intent is rarely available, willfulness may be established by circumstantial evidence.  United States v. Boulerice, 325 F.3d 75, 80 (1st Cir. 2003).  Evidence establishing willfulness may be any conduct the likely effect of which would be to mislead or conceal.  Spies v. United States, 317 U.S. 492, 499 (1943).  A defendant may not consciously avoid knowledge of the law or the facts that would make the conduct illegal.  See, e.g., United States v. Ramsey, 785 F.2d 184, 189 (7th Cir.), cert. denied, 476 U.S. 1186 (1986).

Unger's willfulness in this case is demonstrated by his affirmative attempts to avoid paying taxes.   The government intends to prove that Unger knew he had obligations under the law because of his obvious attempt to falsely say that those obligations had been met through the attempted filing in Saratoga County.

### D.  Count 7:  Fictitious Obligations (18 U.S.C. § 514(a)(2))

In order to prove a violation of 18 U.S.C. § 514(a)(2), the Government must prove the following elements beyond a reasonable doubt:

1.  The defendant passed, uttered, presented, or offered, or caused to be uttered, presented, or offered the false or fictitious instrument, document or other item identified in the indictment;
2.  The instrument, document or other item appeared, represented, or purported to be an actual security or other financial instrument issued under the authority of the United States or other political subdivision of the United States; and
3.  The defendant did so with the intent to defraud.

United States v. Anderson, 353 F.3d 490, 500 (6th Cir. 2003), cert. denied, 535 U.S. 1016 (2004).

18 U.S.C. § 514(a)(2) addresses "'false or fictitious obligations,' so long as they appear to be 'actual.'" United States v. Howick, 263 F.3d 1056, 1066 (9th Cir. 2001), cert. denied, 535 U.S. 946 (2002). In other words, the statute applies to documents that are not forgeries of any existing financial instrument, but those that appear actual "in the sense that [they] bear[] a family resemblance to genuine financial instruments." Id. at 1067-68.

Here, Unger filed a purported financial instrument, specifically a document entitled "Secured Promissory Note," in the supposed amount of $200,000, with the Albany County Clerk's Office in January 2008. The documents filed with the clerk's office are signed by Unger. They are apparently meant to be a public filing reflecting the purported payment presented to Dr. O'Donnell regarding the orthodontic practice. Unger filed the document with the intent to defraud since the promissory note appears to be an actual financial instrument; it bears a representation of a bald eagle, indicates that it is "registered" at the top of the document, mentions the United States Department of Treasury, and bears the defendant's signature and information at the bottom of the document.

IV.     **EVIDENTIARY ISSUES**

      A. **Expert Testimony**

Federal Rule of Evidence 702 governs the admissibility of expert witness testimony, providing:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

A trial judge has broad discretion to admit or excuse expert testimony under this Rule. *United States v. Aminy,* 15 F.3d 258, 261 (2d Cir. 1994);  *United States v. Tutino*, 883 F.2d 1125, 1134 (2d Cir. 1989); *United States v. Diaz*, 878 F.2d 608, 616 (2d Cir. 1989).

A judge's determination to admit such evidence will be overturned only if "manifestly erroneous" or an "abuse of discretion".  *General Electric Co. v. Joiner*, 522 U. S. 136, 142 (1997); *United States v. Tutino*, 883 F.2d 1125, 1134 (2d Cir. 1989); *United States v. Brown*, 776 F.2d 397, 400 (2d Cir. 1985).

In this case, the government intends to present the expert testimony of Amy Frame.  Amy Frame is an employee of the United States Bureau of Public Debt and will testify regarding the charges contained in count 7 of the indictment.  Specifically, she will testify to the fact that the documents that the defendant filed with the Albany County Clerk's Office on January 18, 2008, are fictitious since they were not issued under the authority of the United States.

## V.    <u>CONCLUSION</u>

Through this trial memorandum the government has attempted to summarize those principles of law which we believe to be applicable in resolving issues that the Court may face during trial.  We respectfully request an opportunity to submit additional legal authority in connection with such other issues as may arise.